**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PATRICK FEARY,

        Plaintiff,

vs.                                        No. CV 14-301 CG

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SSA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Patrick Feary's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum* ("Motion"), filed on October 21, 2014, (Doc. 15); Defendant's *Brief of the Commissioner* ("Response"), filed on December 16, 2014, (Doc. 17); and Mr. Feary's *Reply to Brief of the Commissioner* ("Reply"), filed on December 23, 2014, (Doc. 18).

      On May 26, 2011, Mr. Feary filed an application for disability insurance and supplemental security income benefits, alleging disability beginning February 3, 2011. (Administrative Record ("AR") at 95–104). His application was denied on August 19, 2011, (AR 60–66), and also upon reconsideration on October 11, 2011, (AR 67–68). Mr. Feary filed his request for a hearing on October 21, 2011, (AR 69–70); the hearing occurred on October 11, 2012 before Administrative Law Judge ("ALJ") Daniel Delgado. (AR 20–52). Mr. Feary and Craig Johnston, an impartial vocational expert, testified at the hearing. (*Id.*).

      The ALJ issued his opinion on December 11, 2012, finding that Mr. Feary was not disabled. (AR 11–18). Mr. Feary filed an application for review by the Appeals Council, which was summarily denied, (AR 1–5), making the decision of the ALJ the final decision

of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Feary complains that the ALJ committed reversible, legal error by: (i) failing to evaluate the medical opinions of Mr. Feary's treating physicians pursuant to the proper standards; (ii) making an improper residual functional capacity ("RFC") finding; and (iii) improperly considering Mr. Feary's limitations resulting from his obesity. (Doc. 19 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge committed legal error when he discounted the medical opinion of one of Mr. Feary's physicians, pursuant to 42 U.S.C. § 405(g), the Court orders that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at

1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this

definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Feary initially applied for disability benefits alleging severe rheumatoid arthritis and obesity. (AR 142). At step one, the ALJ determined that Mr. Feary met the insured status requirements through December 31, 2015, and found that he had not engaged in substantial gainful activity since February 3, 2011, the date of alleged onset. (AR 13). At step two, the ALJ concluded that Mr. Feary was severely impaired by rheumatoid arthritis and obesity. (*Id.*). The ALJ also concluded that Mr. Feary's history of abdominal pain, of which there was evidence in the record, was non-severe. (AR 14).

At step three, the ALJ explained that he considered whether Mr. Feary's

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

rheumatoid arthritis met or medically equaled listing 14.09, but that the medical evidence did not establish that Mr. Feary satisfied that listing's criteria. (AR 14). The ALJ ultimately found that none of Mr. Feary's impairments, solely or in combination, met or medically equaled any of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.*).

The ALJ proceeded to step four, and first determined Mr. Feary's RFC. He considered Mr. Feary's subjective complaints and the objective medical evidence in the record, and ultimately found Mr. Feary's testimony to be not credible. (AR 14–16). The ALJ found that Mr. Feary could perform a restricted range of sedentary work, as that term is defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he must change positions between sitting and standing every 30 to 35 minutes, is able to reach, handle, or finger, but no more than frequently, and is unable to operate machinery or work with heavy equipment or at unprotected heights. (AR 14).

Next, the ALJ considered whether Mr. Feary was capable of doing any of his past relevant work. (AR 17). The ALJ explained that Mr. Feary's past relevant work included the jobs of material handler and fast food worker, which are more physically demanding than his RFC. (AR 15). In light of the RFC finding, the ALJ found that Mr. Feary was unable to do his past relevant work. (*Id.*).

At step five, the ALJ determined whether Mr. Feary would be able to perform any other work existing in significant numbers in the national economy. (AR 15). The ALJ categorized Mr. Feary as a "younger individual age 18-49," with at least a high school education and English-language proficiency.[2] (*Id.*). The vocational expert stated that an individual with Mr. Feary's same age, education, work experience, and RFC could

---

[2]  Mr. Feary was age 33 on the alleged date of disability onset.

perform the jobs of surveillance monitor, sorter, and cashier. (AR 46–49). The vocational

expert testified that those jobs existed in significant numbers in the national economy.

(*Id.*). After finding the vocational expert's testimony to be consistent with the Dictionary of

Occupational Titles, the ALJ adopted his testimony. (AR 17–18).

The ALJ then concluded that because Mr. Feary was capable of performing work

existing in significant numbers in the national economy, he was not disabled pursuant to

20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 18).

### IV. Analysis

Mr. Feary alleges that the ALJ committed several reversible errors at step four of

the sequential analysis. First, Mr. Feary contends that the ALJ violated the treating

physician rule because he did not properly consider the medical opinions of Lucio

Martinez, M.D. or Rovinder Singh Saini, M.D. (Doc. 15 at 13–15). He argues that the ALJ

did not provide sufficiently specific reasons for discounting these medical opinions, and

in the alternative that the ALJ's reasoning is not supported by substantial evidence in the

record. (*Id.*). Second, he complains that the ALJ failed to properly assess the physical

limitations caused by his impairments in formulating the RFC. (*Id.* at 16–18). Last, he

argues that the ALJ did not adequately consider the limiting effects of his obesity on his

rheumatoid arthritis. (*Id.* at 19–20).

The Commissioner maintains the ALJ did not commit legal error because he

properly accounted for all of the medical opinions in the record in making the RFC

finding. (Doc. 17 at 8–16). The Commissioner also maintains that the ALJ considered all

of the evidence in the record related to Mr. Feary's impairments, including those resulting

from obesity, and assigned to him the limitations that the evidence reasonably

supported. (Id. at 17–20).

A.   _Challenge to the ALJ's Analysis of the Medical Opinions_

Mr. Feary first challenges the ALJ's consideration of Dr. Martinez's and Dr. Saini's medical opinions. He argues that the ALJ erred by not properly explaining why he rejected their medical opinions, which ascribe more restrictive limitations to Mr. Feary than the ALJ's RFC finding. The Commissioner responds that those physician's medical opinions were properly weighed and incorporated into the ALJ's RFC finding, and that Mr. Feary simply failed to meet his burden of proving he is disabled.

1.   _The ALJ Must Evaluate Every Medical Opinion in the Record_

The Regulations require the ALJ to evaluate every medical opinion in the record. _See_ 20 C.F.R. §§ 404.1527(c), 416.927(c). A medical opinion is a statement from a physician, psychologist, or other acceptable medical source that reflects judgments about the nature and severity of the claimant's impairment(s), including their symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment(s), and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

"The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." _Robinson v. Barnhart_, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2), and Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory

7

diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is accorded controlling weight because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (citation omitted).

If a treating physician's opinion is not supported by medical evidence or consistent with the record, it may still receive deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The level of deference the treating physician's opinion receives must be determined in consideration of the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). In sum, the ALJ must conduct a sequential, two-step inquiry if he wishes to accord a treating physician's opinion less than controlling weight. First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, he must determine what deference he will grant the opinion after considering the factors listed above. Each step in the inquiry is "analytically distinct." *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The medical opinions of non-treating sources are also evaluated by the ALJ, but in

consideration of the deference factors alone. *See* 20 C.F.R. §§ 404.1527(c), 416.927 (c).

When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are "sufficiently specific to make clear to any subsequent reviewers"—for the weight that he ultimately assigns to the medical opinions in the record. *See Langley*, 373 F.3d at 1119 (citations omitted). His determination, like all of his findings, must be supported by substantial evidence.

> 2.     *The ALJ's Consideration of Dr. Martinez's Medical Opinions*

Mr. Feary contends that the ALJ erred by ignoring Dr. Martinez's assessment of her functional abilities dated August 23, 2011.[3] (AR 272–74). Dr. Martinez examined Mr. Feary the day prior, and noted that Mr. Feary had diagnoses of rheumatoid arthritis and obesity since August 21, 2009. (AR 272). Dr. Martinez indicated that Mr. Feary had the following complaints: (i) pain and tenderness in his ankles, knees, hips, fingers, and wrists, and stiffness every morning in those joints; (ii) redness and warmth in all of his joints; (iii) swelling and occasional flares; and (iv) fatigue and occasional fever. (*Id.*). Dr. Martinez observed edema and swelling in Mr. Feary's fingers and toes, mild redness, contracture in his fingers, and difficulty with opposition in both thumbs due to pain and swelling. (*Id.*).

Dr. Martinez opined that Mr. Feary had significant limitations in doing repetitive reaching, handling, and fingering, as well as significant limitations grasping, turning, and twisting objects, on both sides. (AR 273). Dr. Martinez noted that Mr. Feary had difficulty with everyday tasks, such as holding utensils, turning a door knob, buttoning and zipping, picking up a coin, and reaching with his arms. (*Id.*). He concluded that Mr. Feary

---

[3] Dr. Martinez completed an arthritic report form at the request of the Agency. (*Id.*).

could only stand or walk for a maximum of 20 minutes at a time, sit for four hours at a time, and must be permitted to change positions between sitting and standing during an eight-hour workday. (AR 273–74). Dr. Martinez further opined that Mr. Feary might not be able to work mornings due to his morning joint stiffness. (AR 274).

As noted above, the ALJ determined that Mr. Feary had an RFC to engage in a reduced range of sedentary work. The ability to perform the full range of sedentary work requires the ability to lift ten pounds, walk or stand for a total of two hours of an eight-hour workday, and sit for a total of six hours of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); *see also* SSR 96-9p, 1996 WL 374185, at *3–4 (July 2, 1996). The ALJ additionally found that Mr. Feary had the capacity to reach, handle, and finger, but no more than frequently, and must be permitted to change between a sitting and standing position every 30 to 35 minutes.

The ALJ did not expressly address Dr. Martinez's opinion in his decision, which Mr. Feary contends was legal error. The Commissioner concedes that the ALJ did not provide any discussion as to how he considered Dr. Martinez's opinion pursuant to the Regulations, but maintains that the ALJ was not required to weigh Dr. Martinez's opinion. The Commissioner reasons that because Dr. Martinez was not a treating source and his opinions are not supported by medical evidence in the record, the ALJ was not required to weigh his opinion expressly.

An ALJ must discuss any uncontroverted evidence he chooses not to rely upon and significantly probative evidence that he rejects, in addition to the evidence supporting his decision. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Here, Dr. Martinez's opinion directly contradicts the ALJ's RFC finding, because Dr. Martinez

assessed more stringent standing, walking, reaching, and manipulative limitations than were assigned by the ALJ.

Further, the vocational expert identified three unskilled sedentary-level jobs that a person with Mr. Feary's RFC could perform, that exist in significant numbers in the national economy. (AR 17). Most unskilled sedentary jobs require good use of both hands and the fingers for fine movements and repetitive hand-finger actions. SSR 96-9p, 1996 WL 374185, at *8. "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.* Therefore, had the ALJ adopted Dr. Martinez's opinion, the base for sedentary work would have been significantly eroded.

The ALJ was required to consider Dr. Martinez's opinion pursuant to the Regulations, and give sufficiently specific reasons for the weight that he afforded that opinion. The Commissioner argues that the ALJ was not required to discuss the opinion because it was unsupported by medical evidence in the record, was mostly based on Mr. Feary's subjective complaints which the ALJ found to be not credible, and was inconsistent with other substantial evidence in the record. However, the Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in post hoc rationalization. *Robinson*, 366 F.3d at 1084–85. The Commissioner's post hoc justifications will not save the ALJ's decision.

Mr. Feary has demonstrated that Dr. Martinez's opinion is significantly probative evidence that was entirely ignored by the ALJ. *See Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007). The ALJ was required to explain why he implicitly rejected Dr. Martinez's opinion by not incorporating the myriad restrictions that Dr. Martinez

11

assessed into the RFC finding. Because the ALJ failed to give any reasons why he discounted Dr. Martinez's opinion, the Court is unable to determine whether that evidence was considered in accordance with the Regulations. The Court will remand this case to allow the ALJ to explain his treatment of Mr. Martinez's medical opinion.

The Court acknowledges that the parties disagree as to whether Dr. Martinez was Mr. Feary's "treating physician" pursuant to the Regulations. Unfortunately, the ALJ made no finding as to Mr. Martinez's status because the ALJ was entirely silent as to his opinion. As explained above, this issue is of import because treating physician opinions are generally accorded more weight than those of non-treating physicians.

The Commissioner argues that the record only demonstrates that Dr. Martinez examined Mr. Feary on a single occasion during the disability period, and it was for the sole purpose of assessing his RFC. (Doc. 17 at 13). Therefore, the Commissioner maintains, Dr. Martinez could not possibly be considered a treating physician because the requisite sustained treating relationship did not exist. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

Mr. Feary responds that Dr. Martinez was his primary care physician from approximately 2003 or 2004 until 2011, and that he stated such was the case in his initial disability application. (AR 145). Mr. Feary reasons that after the Commissioner became aware of the treating relationship, the Agency contacted Dr. Martinez and requested that he complete the arthritic report form to assess Mr. Feary's abilities. Mr. Feary contends that if the record is deficient of Dr. Martinez's treatment notes that would establish the extent of the treating relationship, it is only because the ALJ failed to obtain them.

The ALJ is responsible for ensuring "that an adequate record is developed during

the disability hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quotation omitted). "The duty to develop the record is limited to fully and fairly developing the record as to material issues." *Id.* at 1168. (quotation and alterations omitted).

On remand, the ALJ should be mindful to resolve any ambiguities or conflicts in the record. *See Thomas v. Barnhart*, No. 04-7141, 147 Fed. Appx. 755, 760 (10th Cir. Sept. 2, 2005) (unpublished) ("If the ALJ believes that the medical record regarding [the claimant's] . . . impairments is insufficient and needs to be further developed, the ALJ must do so."). Both parties should take the appropriate steps to obtain relevant treatment records from Dr. Martinez that are in existence and submit them into the record. *See, e.g.*, *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (holding that the ALJ should take the appropriate steps to obtain evidence that already exists). The ALJ should determine the extent of Dr. Martinez's treatment relationship with Mr. Feary, and then analyze Dr. Martinez's opinion pursuant to the appropriate standard as outlined above.

## V. Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ failed to consider Dr. Martinez's opinion constituting reversible legal error. The Court does not decide any other issue raised by Mr. Feary on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Mr. Feary's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum*, (Doc. 15), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this

Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE